UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COREY M. HOWARD**, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 17-2158 (TSC) |
| **UNITED STATES OF AMERICA**, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Corey Howard brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, seeking the release of records maintained by the Executive Office for United States Attorneys ("EOUSA"), a component of the United States Department of Justice ("DOJ"). On February 21, 2019, the court issued a Memorandum Opinion and Order (ECF No. 22) denying Defendant's first motion for summary judgment (ECF No. 13) without prejudice for three reasons. First, EOUSA's declarations did not describe adequately the records deemed responsive to Plaintiff's FOIA request. Second, EOUSA's declarations did not describe adequately the records obtained from the Assistant United States Attorney ("AUSA") to whom Plaintiff's criminal case was assigned. Third, EOUSA referred an unspecified number of records to the United States Marshals Service ("USMS") and to the Federal Bureau of Prisons ("BOP") without explaining whether or when these entities responded to Plaintiff.

On May 23, 2019, Defendant filed its renewed motion for summary judgment (ECF No. 25). On May 24, 2019, the court issued an order (ECF No. 26) directing Plaintiff to file his opposition or other response to Defendant's renewed motion. The order advised Plaintiff that, if

1

he failed to file a response by June 24, 2019, or failed to respond to the arguments raised by Defendant in its motion, the court would treat Defendant's renewed motion as conceded and, if the circumstances warranted, enter judgment for Defendant. The Clerk of Court confirmed that Plaintiff at that time had been designated to MDC Brooklyn, and she sent copies of the order and Defendant's motion to Plaintiff at that address. The mail (ECF No. 27) was returned as undeliverable. After Plaintiff notified the Clerk of Court of his change of address (ECF No. 28), the court issued an order (ECF No. 30) extending Plaintiff's opposition deadline to October 4, 2019. Plaintiff mailed his opposition from FCI Berlin on October 3, 2019, and the court deems the opposition timely filed, even though the Clerk of Court did not receive it until October 15, 2019 (ECF No. 31). Defendant did not file a reply. For the reasons discussed below, the court GRANTS Defendant's motion.

## I. BACKGROUND

By letter dated May 2, 2016, Plaintiff submitted a FOIA request to the EOUSA:

> I am Corey Howard Reg # 13435-084 and I am requesting all information and documentation that was ever used or pertaining to my case. My case # is 7:08-cr-00023 . . . out [of the] Western District of Virginia[,] Roanoke Division[.] I want this information [including] Motion for Discovery, Search Warrant, Investigation Report and watever [sic] else [sic] that's in my case. I'm requesting all this information immediately and mailed to me pertaining to that case # that I provided to yall already[.]

Errata (ECF No. 21), Decl. of Princina Stone (ECF No. 21-1, "Stone Decl."), Ex. B at 1 (emphasis removed).[1] EOUSA assigned the request a tracking number, FOIA Request No. 2016-02765, and referred it to the United States Attorney's Office for the Western District of Virginia

---

[1] Defendant submitted its summary judgment motion without attaching the Declaration of Princina Stone. Defendant filed the declaration with an Errata (ECF No. 21), the exhibits to which it filed with its original summary judgment motion (ECF Nos. 13-6 to 13-11).

2

("USAO-WDVA") with instructions that its staff conduct a search for responsive records. Stone Decl. ¶¶ 5-6.

On June 8, 2016, Kathy Bradley, a Paralegal Specialist for the USAO-WDVA, searched the Legal Information Office Network Systems database ("LIONS"), the United States Attorney's Offices' case management system at that time, using Plaintiff's name and criminal case number as search terms. Def.'s Mem. in Support of its Mot. for Summ. J. (ECF No. 13-1, "Def.'s Mem."), Decl. of Kathy Bradley (ECF No. 13-5, "Bradley Decl.") ¶ 3. Results of the LIONS search indicated that Plaintiff entered a guilty plea, a copy of which Bradley obtained from the district court's public docket. Bradley Decl. ¶ 3. The plea agreement indicated "that Plaintiff waived his right to receive any information related to his criminal case from the federal government under FOIA or the Privacy Act." *Id*.; *see* Stone Decl., Ex. C at 8 ¶ 3. Bradley "forwarded a copy of the plea agreement to EOUSA" on June 8, 2016. Bradley Decl. ¶ 4. Based on Plaintiff's waiver, EOUSA denied Plaintiff's FOIA request in full and notified Plaintiff of its determination by letter dated June 10, 2016. Compl. at 1; *see id*., Attach. 1.

On or about August 4, 2016, Plaintiff pursued an administrative appeal of EOUSA's decision to DOJ's Office of Information Policy ("OIP"). *Id*. at 2; *see id*., Attach. 3. He had not received a response from OIP when he filed this lawsuit on October 2, 2017.[2] *Id.* EOUSA was notified of the lawsuit on January 4, 2018, Stone Decl. ¶ 10, contacted Bradley on January 5, 2018, Bradley Decl. ¶ 5, and asked that she conduct a search for responsive records, *id*.

Bradley learned that Plaintiff's criminal case file had been archived at the Federal Records Center ("FRC"). *Id*. ¶ 6. She requested the file's return and received it on January 19,

---

[2] The court treats the complaint as having been filed on October 2, 2017, the date on which the Clerk of Court received it.

2018.[3] *Id.* Bradley then forwarded the entire file to EOUSA on January 24, 2018. *Id.* ¶ 7; Def. EOUSA's Mem. in Support of its Renewed Mot. for Summ. J. (ECF No. 25-1, "Def.'s Renewed Mem."), Supp. Decl. of Kathy Bradley (ECF No. 25-3, "Supp. Bradley Decl.") ¶ 3.

At EOUSA's behest, on February 16, 2018, Bradley emailed all personnel at USAO-WDVA advising them of Plaintiff's FOIA case and requesting that any records pertaining to Plaintiff in their possession be sent to her. Bradley Decl. ¶¶ 8-9. She learned that USAO-WDVA's Forfeiture Division had a file pertaining to Plaintiff which had been sent to FRC, had the file retrieved, and on March 7, 2018, forwarded the entire forfeiture file to EOUSA for review and processing. *Id.* ¶ 8; Supp. Bradley Decl. ¶ 3.

Bradley sent a second email to USAO-WDVA personnel on May 10, 2018. Bradley Decl. ¶ 9; Stone Decl. ¶ 12. In response, the AUSA to whom Plaintiff's criminal case had been assigned produced additional records, all of which Bradley forwarded to EOUSA for review and processing. Bradley Decl. ¶ 9.

EOUSA initially referred 37 pages of records to the USMS, which was to have responded to Plaintiff directly. *See* Stone Decl., Ex. F at 2. Subsequently "the agencies mutually agreed to convert the referral into a consultation" regarding the appropriate disposition of responsive USMS records. Def.'s Renewed Mem., Decl. of John W. Kornmeier (ECF No. 25-3, "Kornmeier Decl.") ¶ 9 & n.1. In error, EOUSA referred 22 pages of Plaintiff's presentence investigation report to the BOP. *Id.* Because Plaintiff had not submitted the required verification of identity form with his FOIA request, *see* 28 C.F.R. § 16.41(d), "EOUSA . . . recalled the record from BOP and did not release it to Plaintiff." Kornmeier Decl. ¶ 9.

---

[3] Bradley declares that she received Plaintiff's criminal file on January 19, 2016. Bradley Decl. ¶ 6. The court presumes that the date is a typographical error, and that Bradley actually received the file on January 19, 2018.

EOUSA has provided the following inventory of records obtained from USAO-WDVA:

- 133 pages of responsive, public documents released in full
- 2 pages of responsive indictments released in part, with only the forepersons' names redacted
- 13 pages of non-responsive duplicates
- 37 pages (referral returned from U.S. Marshals Service) related to Plaintiff's forfeiture and warrant for arrest: 12 were non-responsive pages; 25 were responsive, public records with only the forepersons' names redacted (23 pages were released in full, 2 pages were released in part)
- 2 non-responsive cover pages
- 27 pages of non-responsive grand jury materials
- 88 pages of non-responsive, internal office paperwork and emails between an AUSA and support staff
- 22 non-responsive pages of a pre-sentence report (referral returned from Federal Bureau of Prisons)

Kornmeier Decl. ¶ 7; *see* Stone Decl. ¶ 11.  The only information withheld by EOUSA from the responsive records was "the Grand Jury foreperson's signature, which appears at the bottom of both the April 10, 2008 Indictment and October 23, 2008 Superseding Indictment of Plaintiff for various counts of possession and distribution of cocaine."  Stone Decl. ¶ 21; *see* Kornmeier Decl. ¶¶ 7, 9.

## II. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See, e.g.,*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

FOIA cases typically are resolved on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). FOIA requires that a federal agency comply with each proper FOIA request by making responsive records available to the public unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.*; *see also* 5 U.S.C. §§ 552(a)–(b). The district court conducts a *de novo* review of the agency's decision to withhold records under any of FOIA's specific statutory exemptions. *See* 5 U.S.C § 552(a)(4)(B). The burden is on the government agency to show that nondisclosed, requested material falls within a stated exemption. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).

In a FOIA case, summary judgment may be based solely on information provided in an agency's supporting declarations. *See ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). The declarations must provide enough information "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). "If an agency's [declaration] describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption,

6

and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the [declaration] alone." *ACLU*, 628 F.3d at 619 (citations omitted). However, a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

**B. EOUSA's Searches for Responsive Records**

An agency cannot prevail on summary judgment unless it "show[s] that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The agency may submit declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 126, and such declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

As described above, Bradley personally conducted searches for records responsive to Plaintiff's FOIA request in the case management system known as LIONS. Bradley Decl. ¶ 3.

7

Using Plaintiff's name and criminal case number as search terms, Bradley located a copy of Plaintiff's plea agreement, *id*., and his criminal case file, *id*. ¶ 6, all of which she forwarded to EOUSA for processing, Supp. Bradley Decl. ¶ 3. Her office-wide email messages yielded even more potentially responsive documents, namely the forfeiture file, *id*. ¶ 8, and records in the AUSA's possession, *id*. ¶ 9.

Plaintiff raises no objection to the scope or method of the searches. Rather, he challenges the searches because they did not yield particular documents of interest to him: a DEA laboratory report and a search warrant with supporting affidavit from the Roanoke City Police Department. Pl.'s Opp'n at 10 (page numbers designated by Plaintiff). Plaintiff represents that these documents had been revealed in open court during proceedings in his criminal case and thereby entered the public domain. *See id.* He asserts that no document disclosed in open court can be withheld under FOIA. *Id*.

"[T]he proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents." *Bigwood v. U.S. Dep't of Defense*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015). EOUSA may prevail on summary judgment even though it did not "locate[] every document that [Plaintiff] expected the agency to find." *Pejouhesh v. U.S. Postal Serv.*, No. 17- CV-1684, 2019 WL 1359292, at *4 (D.D.C. Mar. 26, 2019). Here, EOUSA demonstrates that its searches for responsive records, particularly by retrieving files from FRC and by sending office-wide emails, were reasonable under the circumstances of this case.

**C. Exemptions 6 and 7(C)**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §

552(b)(6).  Exemption 7(C) protects "records or information compiled for law enforcement purposes" if release "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  EOUSA relies on Exemption 6 in conjunction with Exemption 7(C) to withhold "the signature of the grand jury foreperson that appears on the bottom of [P]laintiff's indictment and superseding indictment."  Stone Decl., Ex. A ("Vaughn Index") at 1; *see also id*. ¶¶ 21-22.

While "FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records," *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011), "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6," *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989). Where, as here, EOUSA invokes both exemptions, the court will "focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus 'establishes a lower bar for withholding material.'"  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (quoting *ACLU*, 655 F.3d at 6) (additional citation omitted).

"To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  EOUSA redacted information from two criminal indictments which, according to its declarant, "were compiled by the government attorney as part of Plaintiff's criminal case."  Stone Decl. ¶ 20.  Further, the declarant explains that the foreperson signed the indictments "for law enforcement purposes while fulfilling the role of

9

foreperson on the Grand Jury that returned an indictment against the Plaintiff in his underlying criminal case." *Id*. ¶ 21. Thus, EOUSA has shown that the responsive records were compiled for law enforcement purposes and fall within the scope of Exemption 7.

EOUSA withheld the foreperson's signatures to protect his or her identity. *Id*. While the declaration is short on explanation, redaction of the signatures is hardly controversial. This Circuit has held that FOIA categorically exempts from disclosure identifying third party information in law enforcement records on the ground that associating them with a law enforcement investigation reasonably could bring about an unwarranted invasion of the third party's privacy. *See, e.g., Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995); *SafeCard Servs.*, 926 F.2d at 1205–06. The court concludes that EOUSA's decision to redact the foreperson's signatures from the indictments was proper. *See Patino-Restrepo v. Dep't of Justice*, 246 F. Supp. 3d 233, 247 (D.D.C. 2017) (withholding under Exemptions 6 and 7(C) names of jury forepersons who signed various superseding indictments of Plaintiff), *aff'd sub nom. Patino-Restrepo v. U.S. Dep't of Justice*, No. 17-5143, 2019 WL 1250497 (D.C. Cir. Mar. 14, 2019), *cert. denied sub nom. Patino-Restrepo v. Dep't of Justice*, 140 S. Ct. 186 (2019); *Hall v. Fed. Bureau of Prisons*, 132 F. Supp. 3d 60, 68 (D.D.C. 2015) (approving EOUSA's decision to withhold Grand Jury foreperson's signature under Exemption 7(C)), *aff'd*, No. 15-5303, 2016 WL 6237817 (D.C. Cir. Sept. 1, 2016) (per curiam), *cert. denied*, 138 S. Ct. 182 (2017).

The foreperson has a cognizable privacy interest which Plaintiff has not overcome by showing a public interest of such magnitude it overrides the foreperson's privacy interest. Furthermore, release of the foreperson's signatures does nothing to advance the public's understanding of EOUSA or its operations.

**D. Segregability**

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); 5 U.S.C. § 552(b). An agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation omitted); *see King*, 830 F.2d at 219 (citing *Dellums v. Powell*, 642 F.2d 1351, 1360 (1980)). EOUSA's declarant avers that she "conducted a detailed, line-by-line review" of the responsive records, Stone Decl. ¶ 25, and that all reasonably segregable non-exempt information from the responsive records has been released, *see id*. ¶ 26.

Plaintiff claims EOUSA's Vaughn Index is insufficient because it fails to explain adequately why the claimed exemptions apply. Pl.'s Opp'n at 8-9. To the contrary, the Vaughn Index clearly identifies the responsive records, demonstrates that the indictment and superseding indictment were compiled for law enforcement purposes, and explains EOUSA's decision to withhold the foreperson's signatures because his or her privacy interest outweighs any public interest in disclosure.

Plaintiff also is under the mistaken impression that EOUSA relies on the Privacy Act as a basis for withholding information. *See* Pl.'s Opp'n at 1, 8-9. "[T]he Privacy Act does not bar disclosure of documents that are otherwise required to be produced under the FOIA." *Woods v. U.S. Dep't of Justice*, 968 F. Supp. 2d 115, 120 (D.D.C. 2013) (citing 5 U.S.C. § 552a(b)(2) and *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982)); *Roble v. Dep't of Justice*, 311 F. Supp. 3d 161, 163–64 (D.D.C. 2018), *aff'd sub nom. Roble v. U.S. Dep't of Justice*, No.

18-5189, 2019 WL 286458 (D.C. Cir. Jan. 3, 2019). Furthermore, even if EOUSA could have invoked the Privacy Act, it is apparent that EOUSA applied only those exemptions available under FOIA. *See* Stone Decl. ¶¶ 4, 26.

EOUSA's supporting declaration and Vaughn Index show that the only information withheld from the responsive records responsive is the foreperson's signature on an indictment and superseding indictment. The Court finds that EOUSA has released all reasonably segregable information.

### III. CONCLUSION

EOUSA has demonstrated that its searches for records responsive to FOIA Request No. 2016-02765 were reasonable, that its decision to withhold information under Exemptions 6 and 7(C) is proper, and that it released all reasonably segregable information. Having shown compliance with its obligations under FOIA, the court GRANTS its motion for summary judgment. An Order is issued separately.

DATE: January 28, 2020

/s/
TANYA S. CHUTKAN
United States District Judge